Michael J. Cavallaro, Esquire
25 Lafayette Place
Kearny NJ 07032
201-243-7818
Fax:201-246-6174
Attorney for Debtor-in-possession,

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re | Chapter 11 |
| Nicholas Pezza | Case #16-33371 RG |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE
BANKRUPTCY CODE DESCRIBING THE CHAPTER 11 PLAN PROPOSED
BY NICHOLAS PEZZA**

PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS

DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR

UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF

REORGANIZATION.  THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF

REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT

THE PLAN IS FAIR AND EQUITABLE.  THE PROPONENT URGES THAT THE

PLAN BE APPROVED.

Dated: February 16, 2018                    /s/Nicholas Pezza


                                            Debtor

1

By: <u>Nicholas Pezza</u>
<u>Debtor</u>

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION
4

    A.     Purpose of This Document
4

    B.     Confirmation Procedures
6

        1. Time and Place of the Confirmation Hearing
7

        2. Deadline For Voting For or Against the Plan
7

        3. Deadline For Objecting to the Confirmation of the Plan
7

        4. Identity of Person to Contact for More Information Regarding the Plan

    C.     Disclaimer
7

II. BACKGROUND
8

    A.     Description and History of the Debtor's Business
8

    B.     Principals/Affiliates of Debtor's Business
8

    C.     Management of the Debtor Before the Bankruptcy
8

    D.     Events Leading to Chapter 11 Filing
8

    E.     Significant Events During the Bankruptcy
8

        1. Bankruptcy Proceedings
9

        2. Other Legal Proceedings
9

3.  Actual and Projected Recovery of
Preferential or Fraudulent Transfers
9

4.  Procedures Implemented to Resolve
Financial Problems
9

5.  Current and Historical Financial
Conditions
10


III. SUMMARY OF THE PLAN OF
REORGANIZATION
10
A. What Creditors and Interest Holders Will
Receive Under the Proposed
10
Plan

B.  Unclassified Claims
10
1.  Administrative Expenses and Fees
10

2.  Priority Tax Claims
12

C.  Classified Claims and Interests
12
1. Classes of Secured Claims
12
2.  Classes of Priority Unsecured Claims
14

3.  Class of General Unsecured Claims
14

4.  Class(es) of Interest Holders
15

D. Means of Effectuating the Plan
15
1.  Funding for the Plan
16

2.  Post-confirmation Management

16

3. Disbursing Agent
   16

E.  Other Provisions of the Plan
    16
       1. Executory Contracts and Unexpired Leases
          16

       2. Changes in Rates Subject to Regulatory
       Commission Approval    16
       3.

3. Retention of Jurisdiction
16

5. Procedures for Resolving Contested Claims
16
6 Effective Date
17
7 Modification                                         1
7
F. Tax Consequences of Plan
17
G. Risk Factors
17

IV. CONFIRMATION REQUIREMENTS AND
PROCEDURES                                        18
A. Who May Vote or Object
18
    1. Who May Object to Confirmation of the Plan 18

    2. Who May Vote to Accept/Reject the Plan
    19
            a. What Is an Allowed Claim/Interest
            19
            b. What Is an Impaired Claim/Interest
            20
    3. Who Is Not Entitled to Vote
        20
    4. Who Can Vote in More Than One Class
        21
    5. Votes Necessary to Confirm the Plan  21
    6. Votes Necessary for a Class to Accept the Plan
        21
    7. Treatment of Nonaccepting Classes
        21
    8. Request for Confirmation Despite
        21
    9. Nonacceptance Class(es)
        22
    B. Liquidation Analysis
        22
    C. Feasibility
        23

V.        EFFECT OF CONFIRMATION OF PLAN
    25
        A.        Discharge
            25
        B. Revesting of Property in the Debtor

25
C. Modification of Plan
26
D.        Post-Confirmation Conversion/Dismissal

27

I.

## INTRODUCTION

Nicholas Pezza is the Debtor in a Chapter 11 bankruptcy case.

On May 10, 2017, the Debtor commenced a bankruptcy case by converting his Chapter 13 case to a Chapter 11 bankruptcy petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §101, et seq.  Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a Plan of Reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document.

THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT A. This is a Reorganization Plan. In other words, the Plan Proponent seeks to accomplish payments under the Plan by collecting rent , by employment, the sale of real property and the successful collection of funds due debtor from a previous partnership.  All secured creditors shall continue to be paid either in the normal course in accordance with their contracts and/or based on the market value of said property. The Proponent seeks to assume all leases.  All general unsecured claims shall be paid 100% of their allowed claim amount in one lump sum payment in full satisfaction of the debt.

### A. Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain

l

information relating to the Plan and the process the Court follows in determining whether

or not    to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO
KNOW ABOUT:**


(1) WHO CAN VOTE OR OBJECT,

(2) THE PROPOSED TREATMENT OF YOUR CLAIM  (I.E, WHAT YOUR CLAIM
WILL RECEIVE IF THE PLAN IS CONFIRMED),  AND HOW THIS TREATMENT
COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,

(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING
THE BANKRUPTCY,

(4) WHAT THE COURT WILL CONSIDER WHEN DECIDING
WHETHER TO CONFIRM THE PLAN,

(5) THE EFFECT OF CONFIRMATION, AND

(6) THE FEASIBILITY OF THE PLAN.

This Disclosure Statement cannot tell you everything about your rights.

You should consider consulting your own lawyer to obtain more specific advice

on how this Plan will affect you and what is the best course of action for

you. Be sure to read the Plan as well as the Disclosure Statement.  If there are

any inconsistencies between the Plan and the Disclosure Statement, the Plan

provisions will govern.  Code Section 1125 requires a Disclosure Statement to

contain "adequate information" concerning the Plan. The term "adequate

information" is defined in Code Section 1125(a) as "information of a kind, and

in sufficient detail," about a Debtor and its operations "that would enable a

hypothetical reasonable investor typical of holders of claims or interests" of

the Debtors to make an informed judgment about accepting or rejecting the

Case 16-33371-RG   Doc 78   Filed 02/20/18   Entered 02/20/18 14:01:33   Desc Main
Document     Page 10 of 31

Plan. The Bankruptcy Court" has determined that the information contained in

this Disclosure Statement is adequate, and it has approved this document in

accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim

has been scheduled by the Debtor or who have filed a proof of claim against

the Debtor and to each interest holder of record as of the date of approval of

this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the

Plan may not be solicited unless you receive a copy of this Disclosure

Statement prior to or concurrently with such solicitation.

**B. Confirmation Procedures**

**Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if

submitted by a creditor whose claim is duly scheduled by the Debtor as

undisputed, non-contingent and unliquidated, or who, prior to the hearing on

confirmation of the Plan, have filed with the Court a proof of claim which has

not been disallowed or suspended prior to computation of the votes on the

Plan. All shareholders of record as of the date of approval of this Disclosure

Statement may vote on the Plan. The Ballot Form that you received does not

constitute a proof of claim. If you are uncertain whether your claim has been

correctly scheduled, you should check the Debtor's Schedules, which are on

file at the office of the Clerk of the Bankruptcy Court located at: United States

Bankruptcy Court, U.S. Court House, 50 Walnut Street, Newark, New Jersey,

07102. The Clerk of the Bankruptcy Court will not provide this information

by telephone.

10

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

### 1. Time and Place of the Confirmation Hearing

The hearing at which the Court will determine whether to confirm the Plan will take place on                    ,                 at                         , in the Courtroom of the Honorable Judge Rosemary Gambardella, Courtroom E, 50 Walnut Street, 3rd Floor, Newark, New Jersey, 07102.

### 2. Deadline For Voting For or Against the Plan

The deadline for voting on the Plan shall be five days prior to the scheduled hearing on said Disclosure Statement.

### 3. Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Michael J. Cavallaro, 25 Lafayette Place, Kearny, New Jersey 07032 no later than seven days prior to the scheduled hearing date for Confirmation of said Plan.

### 4. Identity of Person to Contact for More Information Regarding the Plan.

Any interested party desiring further information about the Plan should contact

Michael J. Cavallaro, 25 Lafayette Place, Kearny, NJ 07032.

### C. Disclaimer

The financial data relied upon in formulating the Plan is based on information provided by the Debtor. The Information contained in this Disclosure Statement is provided by Counsel for the Debtor. The Plan Proponent represents that everything stated in the Disclosure Statement are true to the Proponents best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

**II.**

### BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor is an Individual Chapter 11 Case.

### B. Principals/Affiliates of Debtor's Business

Nicholas Pezza, Debtor

### C. Management of the Debtor Before and During the Bankruptcy

No Changes.

### D. Events Leading to Chapter 11 Filing:

With the decline of the Real Estate market and wavering economy the debtor saw a dramatic decline of his monthly income. This reduction of monthly income led to an inability to maintain regular monthly mortgage and budget obligations. The

Debtor filed this Bankruptcy Petition to protect his real and personal property and to
allow him the ability to restructure his secured and unsecured debt.

### E. Significant Events During the Bankruptcy

### 1. Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred during this
case:

1.    Chapter 13 Bankruptcy case was filed by Nicholas Pezza
      on December 8, 2016 and then case converted to
      Chapter 11 on May 10, 2017.

2.    On May 10, 2017 a Motion for Relief from Stay was
      filed in regards to the property located at 385 Passaic
      Avenue, Lodi which Motion was resolved by Consent
      on June 14, 2017.

3.    The debtor attended his required Chapter 13 341
      Meeting of Creditors and IDI which meeting was held
      and concluded.

4.    On June 25, 2017 the Application for Retention of
      Professional Michael J. Cavallaro was filed with order
      granting this retention on July 21, 2017.

5.    On August 15, 2017 Applications for both Realtor and
      Accountant were filed with Order granting these applications
      signed on August 30, 2017.

13

### 2. Other Legal Proceedings

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings: **N/A**

## 6. Actual and Projected Recovery of Preferential or Fraudulent Transfers

Debtor does not believe that there were any preferential or fraudulent transfers.

### 4.Procedures Implemented to Resolve Financial Problems

In an effort to remedy the problems that led to the bankruptcy filing, Debtor has implemented the following procedures: Debtors Monthly Operating Reports reflect that he has employment income, Rental Income, Business income and Pending sale proceeds sufficient to fund a Chapter 11 Plan.

### 5. Current and Historical Financial Conditions.

The feasibility of the Plan of Reorganization is based on the income drawn from the Debtor's monthly rental income, employment income, Business income and Sale proceeds of real property.

## III. SUMMARY OF THE PLAN OF REORGANIZATION

## A. What Creditors and Interest Holders Will Receive Under the Proposed Plan

The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

## B. Unclassified Claims

Certain types of claims are not placed into voting classes. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class:

14

## 1. Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plans:

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| 1. Michael Cavallaro, Esq. | $25,000.00 | Upon Entry of Order Administrative Claim Approving fees | |
| 2. Clerk's Office Fees | $0.00 | Paid in full on Effective date | |
| 3. Angelo Gallo, CPA | $Unknown | Paid in full on Effective date | |
| 4. Office of the United States Trustee Fees | $ Unknown | Paid in full on Effective date | |
| TOTAL ESTIMATED: | $ Unknown | | |

## Court Approval of Professional Compensation Required:

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be allowed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute. As indicated above, the Debtor will need to pay administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred

cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

**The Internal Revenue Service has a priority claim in the amount of $589.70 which shall me paid by the debtor monthly at a rate of $9.82. Payment shall be disbursed monthly not to exceed 60 months from date of case filing.**

C. Classified Claims and Interests

1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes of creditors containing the holders of the Debtor's secured pre-petition and post-petition claims and their treatment under this Plan are as follows: (Please note none of the secured creditors identified below are impaired or insiders.)

**1. Ester Tufano has a First mortgage on the debtors' investment property located at 385 Passaic Street, Lodi, New Jersey which mortgage will continue to be paid direct and outside the plan by the debtor. The market value of said property at the time of the filing is $500,000.00 with a balance due said lien holder of $360,000.00. The Debtor has this property on the market to sale and his intent is to sale the property and use the equity to help fund the plan.**

**2. Ester Tufano has a First mortgage on the debtors' investment property located at 10 A Charles Street, Lodi, New Jersey which mortgage will continue**

17

to be paid direct and outside the plan by the debtor. The market value of said property at the time of the filing is $350,000.00 with a balance due said lien holder of $198,000.00. The Debtor has this property on the market to sale and his intent is to sale the property and use the equity to help fund the plan

3. Nationstar has a first mortgage on the debtors' real property located at 878 River Rd., Elmwood, New Jersey with a principal balance owed at the time of filing of $275,000.00. The market value of said property at the time of the filing is $400,000.00 which the Debtors moves to attempt to modify this mortgage to allow for all pre and post mortgage arrearages to be restructured through the remaining life of the mortgage. If the Loan modification fails to be approved the debtor will propose a cure plan to be paid over the five years of the plan starting at confirmation.

4. Rushmore Loan Management has a first mortgage on the debtors' investment property located at 322 Sampson Avenue, Seaside Heights, NJ which pre-petition arrearage amount of $40,000.00 shall be paid at a rate of 5.25% over sixty months for a monthly amount of $760.00 per month. The debtor shall continue to maintain post-petition mortgage payments to said creditor.

5. Bank of America Home Loans has a First mortgage on the debtors' investment property located at 488 Dewey Avenue, Saddle Brook, New Jersey which mortgage will continue to be paid direct and outside the plan by the debtor. The market value of said property at the time of the filing is $400,000.00 with a balance due said lien holder of $314000.00. The Debtor has this property on the market to sale and his intent is to sale the property and use the equity to help fund the plan. If property does not sale it will be surrendered back to the

18

**mortgage holder.**

### 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The following chart sets forth the priority unsecured claims and their treatment under this Plan:

### 3. Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

**General Unsecured creditors who filed Valid Proofs of Claim shall be paid a 100% of the claim amount stated from the sale of Real estate.**

| Creditor | Balance |
|---|---|
| 1.  Advanta Cardworks | $5133.00 |
| 2. Chase Card | $9337.00 |
| 3. Cavalry SPV | $6876.08 |
| 4. Discover Bank | $10880.02 |
| 5. Midland Funding | $4527.27 |
| 6. Internal Revenue Service | $589.70 |

### 4. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.   If the Debtor is a corporation, entities holding preferred or common stock in

the Debtor are interest holders.   If the Debtors are a partnership, the interest holders

include both general and limited partners. If the Debtor is an individual, the Debtor is the

interest  holder.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1. | Nicholas Pezza: | Y | 100% Interest |

**D. Means of Effectuating the Plan**

**1. Funding for the Plan**

The Plan will be funded by Nicholas Pezza, the Debtor, by Continued Rental

income, Employment Income, Business income and Sale proceeds.

**2. Post-confirmation Management**

**N/A**

**3. Disbursing Agent**

The Debtor, Nicholas Pezza**,** shall act as the disbursing agents for the purpose of

making all distributions provided for under the Plan.

**E. Other Provisions of the Plan**

**1. Executory Contracts and Unexpired Leases**

The Plan provides that all Executory Contracts and Unexpired Leases shall be

deemed assumed. All proofs of claim with respect to claims arising from

said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set

forth for filing claims in any order of the Bankruptcy Court approving such rejection or

(ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not

20

filed timely, will be barred forever from assertion.

**2. Changes in Rates Subject to Regulatory Commission Approval**

N.A.

**3. Retention of Jurisdiction**

The Court will retain jurisdiction as provided in the Plan.

**4. Procedures for Resolving Contested Claims.**

The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims. The Proponent has reviewed the claims that have been filed. The Proponent does not anticipate at this time contesting any claims. However if the need arises where an Objection to Claim is necessary and the Court deems the claim withdrawn then the Debtor will have sixty (60) days after the entry of the Order Confirming the Plan to object to said claim.

**5. Effective Date**

The Plan will become effective on the Effective Date which is thirty (30) days from the date of the Order of Confirmation.

**6. Modification**

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F. Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to

possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and

DO NOT represent that the tax consequences contained below are the only tax

consequences of the Plan because the Tax Code embodies many complicated

rules which make it difficult to state completely and accurately all the tax implications of

any action. The following are the tax consequences that the Plan will have on the

Debtors tax liability:

  NONE


**G. Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain

risks attendant upon the consummation of the Plan. You are encouraged to supplement

this summary with your own analysis and evaluation of the Plan and Disclosure Statement,

in their entirety, and in consultation with your own advisors.  Based on the analysis of the

risks summarized below, the Plan Proponent believes that the Plan is viable and will

meet all requirements of confirmation:

**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS

PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE

LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The

following discussion is intended solely for the purpose of alerting readers about basic

confirmation issues, which they may wish to consider, as well as certain deadlines for

filing claims.

The proponent CANNOT and DO NOT represent that the discussion contained

below is a complete summary of the law on this topic. Many requirements must be met

before the Court can confirm a Plan. Some of the requirements include that the Plan must

be proposed in good faith, that creditors or interest holders have accepted the Plan, that the

Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation,

and that the Plan is feasible. These requirements are not the only requirements for

confirmation.

## A. Who May Vote or Object

### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained

below not everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that

creditor or interest holder has a claim that is both (1) allowed or allowed for voting

purposes and (2) classified in an impaired class.

#### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or

interest to have the right to vote. Generally, any proof of claim or interest will be allowed,

unless a party in interest brings a motion objecting to the claim. When an objection to a

claim or interest is filed, the creditor or interest holder holding the claim or interest cannot

vote unless the Court, after notice and hearing, either overrules the objection or allows

the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS**

_____

A creditor or interest holder may have an allowed claim or interest even if a proof

of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled

on the Debtors schedules and such claim is not scheduled as disputed, contingent, or

unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed

allowed if it is scheduled and no party in interest has objected to the interest.

### b. What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a

class that is impaired under the Plan. A class is impaired if the Plan alters the legal,

equitable, or contractual rights of the members of that class. For example, a class

comprised of general unsecured claims is impaired if the Plan fails to pay the members of

that class 100% of their claim plus interest.

In this case, the Proponent believes that unsecured creditors as a class are non impaired.

Parties who dispute the Proponents characterization of their claim or interest as

being impaired or unimpaired may file an objection to the Plan contending that the

Proponents has incorrectly characterized the class.

### 3. Who Is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have

been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to

Code Section 507(a)(1), (a)(2), and (a)(8)73; and (4) claims in classes that do not receive

or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote

because such classes are deemed to have accepted the Plan. Claims entitled to priority

pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because

such claims are not placed in classes and they are required to receive certain treatment

specified by the Code. Claims in classes that do not receive or retain any value under the

Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF

YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A

RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section (IV.A.8.).

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (*1/2*) in number and at least two-thirds *(2/3)* in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two thirds (2/3) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7. Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non- accepting classes are treated in the manner required by the Code.  The process by which non accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cram down". The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it

meets all consensual requirements except the voting requirements of Section 1129(a)(8)

and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each

unpaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b)

and applicable case law.

### 8. Request for Confirmation Despite Non acceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this Plan by cram down on

the impaired class if any of this class does not vote to accept the Plan.

### B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a

liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an

impaired class and that claimant or interest holder does not vote to accept the Plan, then

that claimant or interest holder must receive or retain under the Plan property of a value

not less than the amount that such holder would receive or retain if the Debtors were

liquidated under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, the Debtor's

nonexempt assets are usually sold by a Chapter 7 Trustee.  Secured creditors are paid

first from the proceeds of the sale of any properties on which the secured creditor has a

lien. Administrative claims are paid next.  Next, unsecured creditors are paid from any

remaining proceeds, according to their rights to priority.  Unsecured creditors with the

same priority share in proportion to the amount of their allowed claims.  Finally, interest

holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all

creditors and interest holders who do not accept the Plan will receive at least as much

under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan

Proponents maintain that this requirement is met here for the following reasons:

26

<u>The value of the asset or real property exceeds the amount owed to lien holder
and all estimated debts owed for administrative claims.</u>

Below is a demonstration, in balance sheet format, that all creditors and interest
holders will receive at least as much under the Plan as such creditor or interest holder
would receive under a Chapter 7 liquidation:

**Assets**

Real Property $1,800,000.00 Minus
secured debt: $1,319,000.00

Any exemption $ Homestead per code
Costs of sale $ 180,000.00
Net equity $ 301,000.00
Personal Property Assets $ 0.00
Total assets $301,000.00

**Liabilities**
Priority Claims: $589.70
Chapter 7 administrative expenses $ unknown
Chapter 11 administrative expenses $ unknown
Other priority claims $ unknown
Total priority claims $ unknown
Amount available for unsecured claims
$36753.35

Total unsecured claims (estimated) $473,877.85
Estimated dividend in Chapter 7 $0.00

**C. Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which
means that confirmation of the Plan is not likely to be followed by the liquidation or the
need for further financial reorganization of the Debtor or any successor to the Debtor
under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect

considers whether the Debtor will have enough cash on hand on the Effective Date of the

Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan

Proponent maintains that this aspect of feasibility is satisfied as illustrated here: The Plan

will be funded by the Debtors continued Employment Income, Rental Income and real

property sale.

To Pay**:** Administrative claims amount at present of which amount is unknown.

To Pay**:** Statutory costs & charges N/A

To Pay**:** Other Plan Payments due on Effective Date shall be determined at the

confirmation of the Plan.  Balance after paying these amounts should be $0.00 except for

the regular monthly post-petition payments that shall be paid in accordance to the terms

stated in the Secured Claims section of this Disclosure Statement.  The sources of the

cash Debtor will have on hand by the Effective Date,as shown above are derived from the

continued employment income, Rental Income, Business income and Real property sales.

The second aspect considers whether the Proponent will have enough cash over

the life of the Plan to make the required Plan payments. The Proponent believe that this

second aspect of the feasibility requirement is met as reflected in the Debtors monthly

operating reports.

The Plan Proponent contends that Debtor's financial projections are feasible in

light of the financial records maintained by the Debtor prior to and during the pendency

of the bankruptcy case. The Debtor, prior to the filing of this bankruptcy case, owned

several investment properties which with the decline of the real estate market caused the

debtor to fall behind with required mortgage and budget payments.

Debtors has implemented procedures to reduce their monthly overhead costs and

has projected their financial future for the next three years as follows: After the sale

28

proceeds of all real properties are received by the debtor and placed into Attorney for

Debtors trust they will upon confirmation or thereafter of the plan be disbursed to

unsecured creditors to then debtors will propose to close the case.

In summary, the Plan proposes to pay secured creditors each month in accordance

with the plan, Debtors paying expenses and post confirmation taxes for the life of the

Plan. The Final Plan payment is expected to be paid within thirty (30) days of the

confirmation of the Chapter 11 plan.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the

Plan is feasible.

## V. EFFECT OF CONFIRMATION OF PLAN

### A. Discharge

The Plan provides that upon confirmation of the Plan, the Debtor shall be

discharged of liability for payment of debts incurred before confirmation of the Plan, to

the extent specified in 11 U.S.C. §1141. However, any liability imposed by the Plan will

not be discharged.  If Confirmation of the Plan does not occur or if, after Confirmation

occurs, the Debtor elects to terminate the Plan, the Plan shall be deemed null and void. In

such event, nothing contained in the Plan shall be deemed to constitute a waiver or release

of any claims against the Debtor or its estate or any other persons, or to prejudice in any

manner the rights of the Debtor or its estate or any person in any further proceeding

involving the Debtor or its estate. The provisions of the Plan shall be binding upon Debtor,

all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity

Interest holders are impaired or whether such parties accept the Plan, upon

Confirmation thereof.

### B. Revesting of Property in the Debtor

29

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

C. **Modification of Plan**

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if proponents modify the Plan before confirmation. The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserve the rights to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the creditor whose Allowed Claim treatment is being modified, so long as no other creditors are materially adversely affected.

D. **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of The United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Date: February 16, 2018                    /s/ Nicholas Pezza, Debtor
                                           Nicholas Pezza